IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **PROFESSIONAL HOSPITAL GUAYNABO, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**MSO OF PUERTO RICO, INC.,**<br><br>Defendant, | **CIVIL NO. 20-1440 (PAD)** |

**MEMORANDUM AND ORDER**

Delgado-Hernández, District Judge.

Before the court is MSO of Puerto Rico, Inc.'s "Motion to Dismiss Amended Complaint for Lack of Jurisdiction Under Rule 12(B)(1)" (Docket No. 18), which Professional Hospital Guaynabo, Inc., opposed (Docket No. 21). MSO replied (Docket No. 24). For the reasons explained below, the court lacks subject matter jurisdiction over this case. Therefore, MSO's motion must be granted and the Amended Complaint dismissed.

**I.     FACTUAL BACKGROUND**

**A.  The Amended Complaint**

On November 30, 2020, plaintiff, Professional Hospital Guaynabo, Inc., filed an Amended Complaint against MSO of Puerto Rico, Inc., asking the court to vacate an arbitration award issued in favor of MSO (Docket No. 16).[1] The award was the result of a "Healthcare Commercial

---

[1] MSI is primarily engaged in the management and administration of provider networks whose participants agree to participate in and comply with the policies, procedures, and reimbursement mechanisms established by MSO. For this purpose, it contracts with companies licensed by the Office of Insurance Commissioner as insurances companies or health services organizations under the laws of Puerto Rico, to provide, arrange for and/or administer the provision of prepaid health care service to residents of Puerto Rico, to perform administrative functions such as claims payment, utilization management, network development and other functions, and the coordination of health care services through the use of MSO's providers participating in the network. See, Hospital Services Agreement, Docket No. 1-3, p. 2.

Demand for Arbitration" filed by Professional Hospital for payment of $618,938.00 relating to outstanding medical and hospitalization services, in accordance with an arbitration provision included in the Hospital Services Agreement ("HSA") entered into between the parties. See, Docket No. 16, Exh. 1 (Award dated May 26, 2020). On December 20, 2020, MSO moved to dismiss the Amended Complaint for lack of jurisdiction (Docket No. 18).[2]

**B. The award (Docket No. 16, Exh 1)**

As recounted by the arbitrator, on May 9, 2013, the parties entered into an HSA which provided for arbitration pursuant to the Commercial Rules of the American Arbitration Association ("AAA") as the alternate dispute resolution method to resolve any dispute with respect to the performance or interpretation of any clause of the HSA when Professional Hospital "is not satisfied with resolution of any matter in controversy submitted to the MSO, and/or the Executive Management of the MSO." See, Docket No. 16, Exh. 1, p. 1 and Article 9.3 of the HSA. On December 18, 2017, Professional Hospital filed a Demand for Arbitration with the AAA, describing the dispute as "medical and hospitalization services which shall remain unpaid" and asking for $618,938.00, plus attorney's fees, interest and arbitration costs (Docket No. 16, Exh. 1, p. 1).

MSO requested dismissal based on a contractual time bar defense, Professional Hospital opposed and, following appointment of an arbitrator, the arbitrator denied without prejudice the request for dismissal considering the "limited facts submitted [at the time]" (Docket No. 18, p. 2).

---

[2] As background, the original complaint was filed on August 24, 2020 (Docket No. 1), and defendant moved to dismiss for lack of jurisdiction (Docket No. 8). When opposing the motion to dismiss, plaintiff conceded that an Amended Complaint was necessary to establish jurisdiction (Docket No. 9). Later, the parties met to discuss the Joint Proposed Schedule ordered by the court (Docket No. 10), where plaintiff's counsel informed MSO's counsel that he intended to file an Amended Complaint within the deadline agreed to by the parties (Docket No. 15, ¶ 4). The Amended Complaint followed (Docket No. 16).

After various procedural events, the arbitrator held a final hearing on June 10-12, 18-21, 16-18, 23-25; December 11, 2019; and January 21, 2020. Id. at p. 5. He admitted into evidence 250 documents (id.) and provided the parties with the opportunity to submit post-hearing briefs – which they did.[3]

On May 26, 2020, the arbitrator issued the award, dismissing Professional Hospital's claim as time barred (Docket No.1-1, p. 21). Quoting Article 9.3 of the HSA, the arbitrator concluded that the 60-day period set therein to submit the matter to arbitration began to run on December 5, 2016, expiring on February 3, 2017. Id. at p. 19 ("9.3 **If Hospital is not satisfied with resolution of any matter in controversy submitted to the MSO, and/or the Executive Management of the MSO, the matter in controversy shall be submitted to binding arbitration in accordance with the Commercial Rules of the American Arbitration Association within sixty (60) days of the last attempted resolution** . . .") (emphasis in the original).

The arbitrator noted that subject to certain exceptions not applicable here, the issue of whether a demand for arbitration was timely filed according to the terms of the arbitration agreement was a matter of contract interpretation (Docket No. 1-1, pp. 16 and 18). The arbitrator stated that during the final hearing MSO proved that Professional Hospital was aware that the 60-day period to submit the controversy to arbitration was triggered on December 5, 2016. Id. at pp. 18-19. And none of the reasons proffered by Professional Hospital to justify the delay were valid or credible. Id. He added that some of those reasons were belied by the evidence presented. Id. In this way, the arbitrator reasoned that "there is no doubt that from December 5, 2016,

---

[3] Before the deadline to submit post-hearing briefs, the arbitrator issued an order identifying certain issues or controversies of law that he wanted the parties to address in their respective post hearing briefs, including "whether the contractual statute of limitations defense raised by [MSO] should be granted or denied]" (Docket No. 16, Exh. 1 p. 5, n.17).

[Professional Hospital] had sixty (60) days to submit the controversy to arbitration and, consequently, the demand for arbitration was untimely filed with the AAA on December 18, 2017 and shall be dismissed." Id. at p 20.[4] Professional Hospital asks the court to vacate the award.

## II.  DISCUSSION

Sections 9, 10 and 11 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 9, 10, 11 supply the means to obtain a "judicial decree" confirming, correcting, modifying, or vacating an arbitration award. Ortiz-Espinosa v. BBVA Securities of Puerto Rico, Inc., 852 F. 3d 36, 42 (1st Cir. 2017). Upon an application to the court under § 9, the court must confirm the award unless it is vacated, modified or corrected as prescribed in §§ 10 and 11. Id. Sections 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification. Id. The FAA does not, however, confer federal jurisdiction but rather requires "an independent jurisdictional basis" to open the federal court's door. Oriental Financial Services Corp. v. Betancourt-Figueroa, ---Fed. Supp. 3d----, 2021 WL 1923720, *2 (D.P.R. Mar. 21, 2021). That being so, the focus is on whether, "save for [the arbitration] agreement," the court would have subject matter jurisdiction over a suit arising out of the controversy between the parties. Ortiz-Espinosa, 852 F.3d at 43-44. The court may "look through" the statement of claim to make this determination. Oriental Financial Services Corp., 2021 WL 1923720 at *3-*4.

Review of the demand for arbitration shows that Professional Hospital's claims involve Puerto Rico law, not federal law. In Professional Hospital's words, the dispute deals with "medical and hospitalization services which shall remain unpaid" (Docket No. 16, Exh. 1, p. 1 and Docket No. 16, ¶ 17). Such is a straightforward collection of monies dispute, as part of which Professional

---

[4] The arbitrator further addressed the parties' request to allocate the expenses in the award (Docket No. 16, Exh. 1 at p. 20). In that sense, he concluded that Professional Hospital was responsible for the expenses of the arbitrator, final hearing locale, and court reporter for a total of $13,000.00. Id. at p. 21.

Professional Hospital Guaynabo, Inc. v. MSO of Puerto Rico, Inc.
Civil No. 20-1440 (PAD)
Memorandum and Order
Page 5

Hospital requested payment for unpaid services provided under the contract. No federal issue was raised or disputed before the arbitrator (Docket No. 16, Exh. 1, pp. 17-18).

Professional Hospital alleges that federal question jurisdiction attaches under the Medicare Act and Medicare regulations because "the matters that were litigated during the arbitration case involve [the Medicare Act] 42 U.S.C. § 1395, et seq.; and 42 U.S.C. § 1395w-1-26(b)(3); 42 C.F.R. § 422.402 and 42 C.F.R. § 422.520" (Docket No. 16, ¶ 2). Those Sections do not create a private cause of action under the Medicare Act. And Professional Hospital points to no legal authority in support of the proposition that the provisions to which it has referred conferred it a federal right to relief in the underlying arbitration claim that would, in turn, result in federal question jurisdiction in this case.

To the contrary, case law in this District is to the effect that Medicare Part C (known as Medicare Advantage) does not preempt contractual claims between MA organizations and health providers so as to confer subject matter jurisdiction over these claims. See, Medical Card System v. Equipo Pro Convalencia, 587 F.Supp.2d 384, 388-389 (D.P.R. 2008) (so holding while noting that the sections plaintiff cited were standards to regulate the behavior of MA organizations, not of healthcare providers under contract with them) (citing, Stephen M. Elwell, Note, Preemption of Contract Claims by the Medicare Act: An Analysis of the Recent Holding in Lifecare Hospitals v. Ochsner Health Plan, 24 Rev. Litig. 125, 143 (Winter 2005) (arguing that the preemption provision of the Medicare Act should not be interpreted to cover contract disputes between Health Maintenance Organizations and health care providers)).[5]

---

[5] The Supreme Court has drawn narrow exceptions "to the general rule that courts look only to the complaint to determine if the action 'arises under' federal law." UBS Financial Services v. Asociación de Empleados del ELA, 223 F.Supp.3d 134, 138 (D.P.R. 2016). Such is the case "when a party pleads a state law claim implicating important federal issues," and as a result "the claim nevertheless arises under federal law." Id. (citing Grable & Sons Metal Prods., Inc. v. Darue Engg & Mfg., 545 U.S. 308, 312 (2005)). In Gunn v. Minton, 568 U.S. 251 (2013), the Supreme

Professional Hospital asserts that "MSO offers its health plan as a Medicare Advantage Organization.[6] But that is of no moment here. See, RenCare, Ltd. v. Humana Health Plan of Texas, Inc., 395 F.3d 555, 558 (5th Cir. 2004) (pointing out that claims for payments against MAO did not arise under the Medicare Act because the dispute was solely between the MAO and the provider, based on the parties' private-agreed-to-payment plan).[7] In the end, the dispute is not based on federal law. As well, the record does not show diversity of citizenship between the parties.[8] And there are no alternate grounds that would permit the court to exercise subject matter jurisdiction here.

### III.   CONCLUSION

For the reasons stated, the motion to dismiss is GRANTED and the Amended Complaint DISMISSED.

**SO ORDERED.**

In San Juan, Puerto Rico, this 4th day of November, 2021.

                                        s/Pedro A. Delgado Hernández
                                        PEDRO A. DELGADO HERNÁNDEZ
                                        United States District Judge

---

Court held that federal jurisdiction will lie over a state law cause of action only if the face of the complaint reveals a "federal issue [that] is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in a federal court without disrupting the federal-state balance of power." Gunn, 568 U.S. at 258. None of those circumstances, which Professional Hospital does not discuss, are present in the case at bar.

[6] Medicare Advantage Organizations are private managed health care organizations that administer Medical Advantage and enter into private contracts with healthcare providers to provide services to the Medical Advantage enrollees. See, 42 U.S.C. § 1395w-27.

[7] Professional Hospital's general reference to "a series of federal opinions" – including Body & Mind Acupuncture v. Humana, 2017 WL 653270 (N.D. Virginia February 16, 2017) – where courts have recognized that this court can exercise federal jurisdiction in cases where claims are filed against a "federal officer and/or under the federal officer removal statute, 28 U.S.C. § 1442" (Docket No. 19, ¶ 5) is misplaced. And even if the court were to accept Professional Hospital's invitation, MSO would be the only party in this case with the power to invoke the federal officer removal statute, but has not done so.

[8] See, Docket No. 1, Section II at ¶¶ 1-2 and Docket No. 8 at ¶ 5 (so confirming).